IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )  Criminal No. 01-29 Erie<br>)<br>ALBERT SHONTAY BOYD   ) | |

**DEFENDANT ALBERT SHONTAY BOYD'S MOTION FOR REDUCTION OF
SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(2) WITH CITATION OF AUTHORITY**

AND NOW, comes the defendant, Albert Shontay Boyd, by his attorney, Thomas W. Patton, Assistant Federal Public Defender, and respectfully files this Motion for Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(2) with Citation of Authority, seeking a reduction in the sentence imposed in the above-captioned case on May 18, 2004.  This motion is based upon the within argument and authority, all files and records in this case, and such further argument and evidence as may be presented at the hearing on this motion.

## I.  INTRODUCTION

This Court sentenced Albert Boyd to a term of imprisonment of 100 months for an offense involving 100 grams of cocaine base.  This sentence was imposed pursuant to the Guidelines range as computed under the United States Sentencing Guidelines as they existed at that time.  Albert's base offense level as computed under § 2D1.1 of the Guidelines for a crack cocaine quantity of 100 grams was 32.  After reducing the offense level for acceptance of responsibility, Ablert's final offense level was 29.  With a Criminal History Category of VI, Albert's corresponding guideline imprisonment range would have been 151 to 188 months.  Because Albert had two prior simple assault convictions, the career offender enhancement from

U.S.S.G. § 4B1.1 applied, raising Albert's offense level to 37. After reducing that offense level for acceptance of responsibility, Albert's total offense level was 34. With a criminal history category of VI, Albert's guideline imprisonment range became 262 to 327 months. Albert filed a motion for downward departure arguing that the career offender enhancement overstated the seriousness of his criminal history and that he suffered from a significantly reduced mental capacity at the time of the offense due to his bipolar disorder. The government also filed a motion for a downward departure pursuant to U.S.S.G. § 5K1.1 based on Albert's substantial assistance. The Court denied Albert's downward departure motion but granted the government's motion and imposed a sentence of 100 months of incarceration to be followed by 5 years of supervised release.

Subsequently, the United States Sentencing Commission amended §2D1.1 of the United States Sentencing Guidelines to decrease by two levels the offense levels applicable to specific weights of cocaine base (the "Crack Amendment"). See USSG, Supp. to App. C., Amdt. 706. This amendment generally reduces by two levels the base offense levels applicable to cocaine base. The Crack Amendment became effective November 1, 2007. Id.

The Crack Amendment was adopted in response to studies which raise grave doubts about the fairness and rationale of the 100-to-1 crack/powder ratio incorporated into the sentencing Guidelines. See generally United States Sentencing Commission, *Report to Congress: Cocaine and Federal Sentencing Policy* (May 2007) (hereinafter "2007 Sentencing Commission Report"); United States Sentencing Commission, *Report to Congress: Cocaine and Federal Sentencing Policy* (May 2002); United States Sentencing Commission, *Special Report to Congress: Cocaine and Federal Sentencing Policy* (April 1997); United States Sentencing

Commission, *Special Report to Congress: Cocaine and Federal Sentencing Policy* (Feb. 1995). See also Kimbrough v. United States, 128 S. Ct. 558, 568-69 (2007) (discussing history of crack cocaine guideline and various Sentencing Commission reports).  Yet the amendment is only a partial response, as the Sentencing Commission itself recognized.  The Commission explained:

> The Commission however, views the amendment only as a partial remedy to some of the problems associated with the 100-to-1 drug quantity ratio. It is neither a permanent nor a complete solution to these problems. Any comprehensive solution requires appropriate legislative action by Congress. It is the Commission's firm desire that this report will facilitate prompt congressional action addressing the 100-to-1 drug quantity ratio.

2007 Sentencing Commission Report, supra, at 10.

On December 11, 2007, the Sentencing Commission made the Crack Amendment retroactive under the authority created by 18 U.S.C. § 3582(c)(2).  The Sentencing Commission did this by including the amendment to § 2D1.1 in the list of retroactive amendments in § 1B1.10 of the guidelines, which took effect on March 3, 2008.  See 73 Fed. Reg. 217-01 (2008); USSG § 2B1.10 (Supp. March 3, 2008).

On February 11, 2008, the Honorable Chief Judge Donetta Ambrose entered a standing order appointing the Federal Public Defender for the Western District of Pennsylvania to represent any defendant sentenced in this district who might be eligible for a reduction of sentence pursuant to 18 U.S.C. § 3282(c)(2) based upon the retroactive application of the Crack Amendment.

 Based on the retroactivity of the Crack Amendment, the statutory authority underlying it, and the Supreme Court's decisions in United States v. Booker, 543 U.S. 220 (2005); Rita v. United States, 127 S. Ct. 2456 (2007); Gall v. United States, 128 S. Ct. 586 (2007); and

<u>Kimbrough v. United States</u>, supra, Albert brings this motion to reduce his sentence.

## II. <u>Argument</u>

**Albert's offense level should be reduced from 32 to 30, and the Guidelines range before application of the career offender enhancement reduced from 151 to 181 months to 130 to 162 months, based on the Amendment to § 2D1.1.**

Title 18, United States Code, section 3582(c)(2) states in relevant part:

[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)[1], upon motion of the defendant . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Section 1B1.10 is the Guidelines policy statement which implements 18 U.S.C. § 3582(c)(2). Subsection (c) of that policy statement lists amendments that are covered by the policy statement. One of the amendments which is listed is Amendment 706, as amended by Amendment 711, to the guidelines is the Crack Amendment, which reduced the base offense level for crack cocaine offenses. <u>See</u> USSG § 2B1.10 (Supp. March 3, 2008).[2]

Because the Crack Amendment has been made retroactive and Albert's sentence was

---

[1] This statute provides that the Sentencing Commission "periodically shall review and revise, in consideration of comments and data coming to its attention, the guidelines promulgated pursuant to the provisions of this section." 28 U.S.C. § 994(o). It further directs the Commission to "consult with authorities on, and individual and institutional representatives of, various aspects of the Federal criminal justice system." <u>Id</u>. It also provides that various representatives of the Federal criminal justice system shall submit their observations, comments, and questions to the Commission. <u>See</u> <u>Id</u>.

[2] This amendment is not listed in the November 1, 2007 Guidelines Manual because the Sentencing Commission vote making it retroactive was on December 11, 2007. <u>See</u> United States Sentencing Commission News Release dated December 11, 2007, available at http://www.USSG.gov/PRESS/rel121107.htm. <u>See</u> <u>also</u> 73 Fed. Reg. 217-01 (2008).

based on a pre-Amendment drug quantity table, 18 U.S.C. § 3582(c) allows this Court to review and reduce, as warranted by the factors set forth in 18 U.S.C. § 3553(a), Albert's sentence. At the time of Albert's initial sentencing, his base offense level as computed under § 2D1.1 of the Guidelines for a crack cocaine quantity of 100 grams was 32. His offense level after a 3-level reduction for acceptance of responsibility was 29. While the career offender enhancement raised Albert's total offense level to 34 (base offense level 37 minus 3 levels for acceptance of responsibility), the underlying offense level based solely on the amount of crack cocaine involved in the case still played a significant role in the ultimate sentencing determination as it formed a basis of Albert's motion for downward departure, and may have influenced the Court's decision on the extent of the departure the Court granted pursuant to the government's motion. A copy of trial counsel's objections to the presentence report laying out the basis for the downward departure is attached as Defendant's Exhibit A.[3]

Application of the Crack Amendment to the crack cocaine guideline in the present case results in a decrease of the base offense level from 32 to 30, and a decrease in the final offense level from 29 to 27. As reflected in USSG, Ch. 5, Pt. A, with a criminal history category of VI, the resulting Guidelines term of imprisonment is now reduced from 151 to 188 months to 130 to 162 months. Had the Court been aware at the time it was sentencing Albert that the sentence called for by the guidelines based solely on the amount of crack involved in the case was 130 to 162 months rather than 151 to 188 months, the Court may have granted a larger departure.

---

[3]The actual motion for downward departure is in the Court file but that file has been moved off-site for storage. The same is true of the government's file. It is counsel's understanding and belief that the motion for downward departure raised the same issues discussed in the letter to the probation office. If the Court wishes to see the motion, counsel will request that the Clerk's office request the file from storage.

It is not possible for either party to know for sure whether or not the crack guideline played a role in the Court's selection of the extent of its downward departure. Albert concedes that the Court may not have looked to see what his guidelines would have been without the career offender enhancement when determining the extent of the 5K departure. However, given that Albert's motion for downward departure discussed the difference between what his guidelines would have been without the career offender enhancement and what his guidelines were because of the career offender enhancement, there is a very real possibility that the Court factored that difference into the extent of its departure. If that was the case, then the Court has the authority to reduce Albert's sentence proportionally to the reduction in the crack guideline under the Crack Amendment.

Application note 3 to § 1B1.10 states that "[w]hen the original sentence represented a downward departure, a comparable reduction below the amended guideline range may be appropriate." The 100 month sentence imposed by the Court was at the bottom of the range called for by offense level 24 and criminal history category VI. If the Court did consider Albert's crack guidelines when determining the extent of its departure, reducing the extent of the departure by two additional levels to 22 would result in a guideline imprisonment range of 84 to 105 months. A sentence of 84 months would, under these circumstances, be a reasonable reduction in Albert's sentence.

Albert has been incarcerated since November 15, 2001. His current projected release date is April 7, 2009. Albert is incarcerated at FCI Butner, in Butner, North Carolina. Albert has earned a diploma in Electrical/Electronics Technology from Vance-Granville Community College located in Henderson, North Carolina, and is currently enrolled in additional classes. A

copy of Albert's diploma is attached as Defendant's Exhibit B.

Albert suffers from bipolar disorder, manic type. As this Court stated in its judgment, Albert does fine when he takes his medication but he hallucinates and acts out when he does not take his medication. The fact that Albert has been able to take his medication, stay stable, and obtain his diploma in Electrical/Electronics Technology is very encouraging. Surely this hard work supports a finding that a reduction in Albert's sentence pursuant to the Crack Amendment is appropriate.

### III.  Conclusion

The Court should adjust Albert's sentencing guideline range downward to 130 to 162 months. If the Court considered Albert's crack guideline in determining the extent of its downward departure, it should then impose a sentence of 84 months imprisonment followed by 5 years of supervised release. A proposed Order, in the form approved of by the Administrative Office of the United States Courts, is attached hereto.

Respectfully submitted,

/s/ Thomas W. Patton
Thomas W. Patton
Assistant Federal Public Defender
Attorney I.D. No. 88653