AMBROSE, FRIEDMAN and WEICHLER
Attorneys at Law
319 West 8th Street
Erie, Pennsylvania 16502-1495
www.afwlawfirm.com

Leonard G. Ambrose III
Philip B. Friedman*
William P. Weichler

(814) 452-3069
Fax (814) 459-0968

E-mail:amfriedlaw@stargate.net

*Also admitted in N.Y.

July 25, 2003

Matt Rea
U.S. Probation Office
6th and State Streets
Erie, Pennsylvania 16501



> RECEIVED
> JUL 25 2003
> U.S. PROBATION OFFICE
> WD/PA

   **Re.**  *U.S. v. Albert Boyd*
      *Cr. No. 01-00029- 001 - Erie*

## OBJECTIONS TO PRESENTENCE REPORT

Dear Mr. Rea:

  This letter will confirm our earlier conversation on Friday, July 18, 2003, regarding Mr. Boyd and the Presentence Report (hereinafter referenced as PSR). I have reviewed the PSR with Mr. Boyd and have discussed the following objections with him. The gist of our objections is simply that the defendant suffers from longstanding major mental illness that has been well documented by various medical physicians over the past 10 years. His mental illness ' significantly contributed to the commission of the prior offenses which forms the basis for his criminal history determination and his status as a career offender. Further, the defendant suffered from a significant diminished mental capacity as a result of his major mental illness and therefore is entitled to a downward departure pursuant to U.S.S.G. §5K2.13.

### I.  THE DETERMINATION THAT THE DEFENDANT IS A CAREER OFFENDER PURSUANT TO U.S.S.G. §4B1.1 OVERSTATES THE SIGNIFICANCE OF THE DEFENDANT'S PRIOR RECORD

  The defendant's criminal history computation of 13 points and a Criminal History Category of VI as well as the determination the defendant is a Career Offender grossly overstates the seriousness of his prior record. See pg. 12, pars. 34 and 35. All of the defendant's adult convictions are for Pennsylvania misdemeanor offenses which were committed during the relevant time period that the defendant suffered from major mental illness as documented in the

**EXHIBIT A**

Matt Rea
July 25, 2003
Page 2 of 2

various medical reports. During this time period he was not taking and/or receiving the necessary medication (i.e. 13 pills per day according to current regimen). All of the behavior is a direct product of the defendant's major mental illness and related pathological features as detailed in the various medical reports including the report prepared by Dr. Robert Wettstein dated May 7, 2002 and the comprehensive report prepared by the Federal Medical Center at Devens, MA. dated October 29, 2002. The doctors at the Federal Medical Center described Mr. Boyd as, "Presents with a chronic history of paranoia, psychosis, substance abuse, personality dysfunction, depression, and criminal behavior." See pg. 13.

The defendant's adult criminal convictions are reflected in paragraphs 28-33 of the PSR. See pages 8-11. The Criminal History Computation at para. 34-35 indicate that the total criminal history points is 13 with a Criminal History Category of VI. Further, para. 35 indicates that in accordance with U.S.S.G. §4B1.1 the defendant is a career offender and therefore his criminal history is VI.

The defendant's prior adult criminal record includes simple assault, para. 28; drug possession, driving under the influence and driving under a suspended license, para. 29; driving under the influence, para. 30; possession of drug paraphernalia, para. 31; criminal mischief, para. 32; and simple assault and driving while suspended for DUI, para. 33.

All of the above behavior is consistent with the diagnostic criteria for bi-polar disorder/manic episode/DSM-IV TR, Major Affective Disorders - Manic Episode, pgs. 357-362. Further, the National Institute of Mental Health in recent pronouncements regarding current research indicates that people suffering from bi-polar disorder regularly abuse drugs as part of their self medication and engage in behavior that can be criminal in nature. For example, the DSM-IV TR, in the commentary entitled "Episode Features" states that an individual in a manic state can become agitated, irritable and aggressive towards others. When one considers the defendant's prior record of adult convictions, the convictions primarily fit into three categories, alcohol and drug abuse, assaultive behavior and driving violations. The defendant's convictions concerning drugs are for possession which is consistent with personal use and his driving violations coupled with his convictions for simple assault reflects his impaired judgment, all of which is a direct bi-product of his major mental illness.

The behavior which resulted in these prior adult convictions occurred while the defendant was not taking medicine nor was he receiving treatment. Since the defendant's return from the Federal Medical Center in Devens, MA., he has been placed on a strict regimen of anti-psychotic medication which requires the ingestion of psychotropic medication three time per day for a total of 13 pills. With this present regimen of medication the defendant's aggressive behavior and paranoid thinking have been substantially reduced and he is able to control his behavior. The defendant's paranoid ideations has been the primary cause of his aggressive behavior. In other words, his aggressive behavior is the product of his pathological thinking which fortunately can be controlled with appropriate medication.

Matt Rea
July 25, 2003
Page 3 of 3

        The defendant's prior record, even though repetitive, is consistent with and a product of
his major mental illness. The Criminal History points computation and the Criminal History
Category determination of career offender significantly overstates the significance of the
defendant's prior adult criminal record. The application of the provisions of the Career Criminal
Provision to the defendant is overkill. In effect, the defendant is being punished for behavior that
is the direct result of his major mental illness which was untreated during the time period of his
prior adult convictions. As the report from the Federal Medical Center states: "It is imperative
that Mr. Boyd receive proper administration and monitoring of his psycho-tropic medication in
order to maintain his level of competency. Should he fail to receive adequate monitoring by
qualified mental health professionals, it is safe to assume that Mr. Boyd's mental status and
presentation will quickly deteriorate and his mental illness will return to an active phase." See
pg. 16.

        Third Circuit case law supports the defendant's position that the facts underlying a prior
conviction may very well overstate the significance of the defendant's prior record and therefore
allow a downward departure from the criminal history category. In *U.S. v. Shoupe, I,* 929 F.2d
116 (3rd Cir.) 1991, the Court initially held that the defendant's youth and immaturity at the time
he committed the first two offenses which established the basis for a career criminal
determination did not warrant downward departure from the Sentencing Guidelines' career
offender provision. The defendant's sentence was vacated and remanded upon a finding that the
District Court's determination that the defendant's relationship with his young son did not
indicate extraordinary family ties that would warrant a downward departure from the applicable
Guideline range. At the defendant's resentencing, the defendant re-raised the overstatement
issue regarding his prior state court convictions which the District Court denied on the basis that
the Court had no discretion to depart downward from the career criminal determination even if
the defendant's prior record over-represented the seriousness of his criminal history under
Section 4A1.3. *Shoupe* appealed the District Court's refusal to consider a downward departure
pursuant to Section 4A1.3 on the basis of overstatement of his prior criminal history and the trial
court's determination that it had no discretion to depart downward regarding the defendant's
criminal history once the criminal history has been determined to qualify for career offender
status.

        On appeal, the Third Circuit in *U.S. v. Shoupe, II,* 988 F.2d 440, 446 (3rd Cir.) 1993, held
that the Sentencing Guideline authorizes departure for cases in which the criminal history
significantly over-represents the seriousness of the defendant's criminal history and further, the
District Court's discretion was not limited by provisions requiring departures to be found only on
factors not adequately taken into consideration by the Sentencing Commission in formulating the
Guidelines. The Court further stated that the District Court erroneously refused to consider other
factors urged by the defendant at resentencing and supported departure for over-representation of
the prior criminal history which required a remand for further sentencing proceedings.

        The Court further concluded:

Matt Rea
July 25, 2003
Page 4 of 4

"That the statutory authority for the promulgation of Section 4A1.13 lies
not in 18 U.S.C. §3553(b), as the government urges, but in the basic
provision of the Sentencing Reform Act that gives the Sentencing
Commission the authority to promulgate the Guidelines and to take into
account, where relevant, the defendant's criminal background." See 18
U.S.C. §994(a), 994(d) and 10.

Therefore, *Shoupe II* makes it clear that the Court does have discretion to grant a
Criminal History departure pursuant to Section 4A1.3 of the Sentencing Guidelines.

## II.    THE DETERMINATION THAT THE DEFENDANT'S
## TOTAL OFFENSE LEVEL IS 34 IS ERRONEOUS IN LIGHT OF THE
## SIGNIFICANT OVERSTATEMENT OF THE DEFENDANT'S
## CRIMINAL HISTORY

On pg. 5, para. 22 of the PSR, a determination is made that the Total Offense Level is 34.
The basis for that determination is set forth in para. 20 which concludes that the defendant is a
career offender within the meaning the U.S.S.G. §4B1.1.

The defendant's Adjusted Offense Level is 29, para. 19. An offense level of 29 with a
criminal history determination of VI is 151 to 188 months. As a result of the career offender
enhancement the Total Offense Level is adjusted upward from 29 to 34 thereby making the
defendant's sentencing range 262 to 327 months. This adjustment is based upon the fact that the
defendant has two prior convictions for simple assault. See para. 20. Because the defendant
suffered from untreated major mental illness at the time the simple assault offenses were
committed and they were relatively minor in nature there is a significant overstatement of his
prior criminal history.

In *U.S. Shoupe, III*, 35 F.3d 835 (3rd Cir.)1994, the Court held that where the criminal
offender status enhances both the criminal history and the base offense level categories, (the
defendant's case) a sentencing court may also depart downward in the base offense level. The
Court held: "We join the other Courts of Appeal that have reviewed this issue and hold that,
where a defendant's offense level has been augmented by the career offender provision, a
sentencing court may depart downward in both the criminal history and offense level categories
under Section 4A1.13. *Id*. at 839.

Therefore, the defendant requests that the total offense level be adjusted to level 29
criminal history category VI which would make his starting sentencing range 151 to 188 months
for the reasons set forth herein.

Matt Rea
July 25, 2003
Page 5 of 5

### III.    THE DEFENDANT IS ENTITLED TO A DOWNWARD DEPARTURE BECAUSE HE SUFFERED FROM A SUBSTANTIALLY IMPAIRED MENTAL CAPACITY AT THE TIME OF THE OFFENSE

As indicated during our discussions, the defendant will move for a departure pursuant to U.S.S.G. §5K2.13/Diminished Capacity on the basis that the defendant suffered from a long standing well documented major mental illness at the time the offense was committed. I have previously provided you with all of the medical reports and the defendant's previous commitment history. The defendant's mental history predates the instant offense by years. Further, all of the medical doctors and psychologists who have examined the defendant agree that he suffers from major mental illness and is in need of daily psychotropic medication in order to maintain his competency and his stability. Since the defendant was not receiving medication at the time of the offense in question and consistent with the findings of the doctors at the Federal Medical Center that the defendant, without medication, will quickly deteriorate and become incompetent, one must conclude that the defendant was substantially impaired at the time the offense was committed.

The defendant's background is one of total impoverishment. Besides suffering from long term major mental illness, he was raised by a mother who was more concerned about her personal life and manipulating him for her benefit. The defendant's natural father is currently incarcerated in the state prison system. He has spent over half of his adult life in various state prisons. He has never provided the defendant any nurturing, guidance or mentoring. Further, he has never supported the defendant financially throughout his childhood. The instant offense is the result of the mother's introduction of the defendant to John Cooley for the purposes of having her son deal crack and then participate in the profits for her own benefit. The defendant's mother is currently incarcerated in the Erie County Jail pending her sentencing on a recent federal indictment for drug distribution. She does not suffer from any mental illness but has used her manipulative qualities to arrange for and encourage her mentally ill son to engage in criminal behavior for her own benefit.

The defendant has cooperated with law enforcement authorities and is presently scheduled to testify against Mr. Cooley in his upcoming trial. The defendant's cooperation has been substantial and truthful.

In part E entitled, "Factors that May Warrant Departure" at pg. 16, para. 65, it is indicated that counsel will be arguing for downward departure due to diminished capacity pursuant to U.S.S.G. §5K2.13. Counsel believes in light of the undisputed medical history that the defendant suffers from a long term major mental illness and is only presently competent as a result of taking large doses of anti-psychotic medication that a recommendation should be made to the Court that the defendant qualifies for a downward departure pursuant to Section 5K2.13.

Matt Rea
July 25, 2003
Page 6 of 6

     To excessively punish a person who has been substantially impaired by long term mental illness is cruel and unfair and runs counter to our basic notions of fundamental fairness.

               Respectfully submitted,

               **AMBROSE, FRIEDMAN and WEICHLER**


BY    *Leonard G. Ambrose III*
               Leonard G. Ambrose III, Esquire
               Attorney for Defendant
               319 West 8th Street
               Erie, Pennsylvania 16502
               814/452-3069
               Supreme Court I.D. # 18824

cc:    Christian Trabold, Esquire
       Honorable Maurice B. Cohill